UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------x
AKSHITA BANERJEE,                           :   Civ. No:

                Plaintiff,    :

-against-                                    :

WESTON CAPITAL MANAGEMENT, LLC    :

                Defendant.    :   March 21, 2007
------------------------------------------------------------x

## COMPLAINT

Plaintiff, Akshita Banerjee, by her attorneys, Liddle & Robinson, L.L.P., and Zeldes, Needle & Cooper, P.C., for her Complaint alleges as follows:

## THE PARTIES

1. Plaintiff, Akshita Banerjee ("Ms. Banerjee"), is a female residing at 23 Soundview Farm Road, Weston, Connecticut 06883. Ms. Banerjee was pregnant during her employment with Defendant Weston Capital Management, LLC from April 4, 2005 until Weston terminated her employment on June 30, 2005.

2. Upon information and belief, Defendant Weston Capital Management, LLC ("Weston") is a Connecticut limited liability company with its principal place of business located at 264 Riverside Avenue, Westport, Connecticut 06880.

## THE NATURE OF THE ACTION

3. This is a civil action for damages and remedies for the violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").

## JURISDICTION

4. This Court has jurisdiction over this action under 28 U.S.C. § 1331.

5. Ms. Banerjee filed a charge of sex and pregnancy discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 16, 2005.

6. On December 21, 2006, Ms. Banerjee received a Notice Of Right To Sue letter from the EEOC. A copy of the Notice of Right To Sue is attached hereto as Exhibit A.

## VENUE

7. Venue is proper in this district under 28 U.S.C. § 1391(b) because Weston's principal place of business is located in the District of Connecticut and the discriminatory conduct occurred in the District of Connecticut.

## FACTS

8. In February 2005, Ms. Banerjee interviewed with Jamilette Hallac ("Ms. Hallac"), Weston's Head of Human Resources and Information Technology and General Office Manager in connection with the position of Director of Client Services in Weston's Research Department.

9. On its website, Weston described the position of Director of Client Services as "responsible for due diligence of prospective managers and financial writing."

10. During the interview, Ms. Hallac described the position of Director of Client Services as a position in which Ms. Banerjee would have several responsibilities, including dealing with clients, serving as the clients' contact with Weston, involvement with the investment fund portfolio, and writing.

11. On or about February 21, 2005, Ms. Hallac orally offered Ms. Banerjee the position of Director of Client Services in Weston's Research Department.

12. During the second week of March 2005, Ms. Banerjee met with Ms. Hallac a second time to negotiate some of the terms of her employment.

13. At this meeting, Ms. Banerjee told Ms. Hallac that she was interested in accepting the position but that she wanted to advise Weston that she was three-months pregnant. Ms. Hallac responded with an awkward laugh and stated, "Well . . . there isn't much we can do about that now . . . that would be discrimination."

14. By email communication dated March 11, 2005, Ms. Hallac expressed reservations about hiring Ms. Banerjee due to circumstances related to her pregnancy. Ms. Hallac stated that Weston was concerned that Ms. Banerjee would either "start off strong, but then decide that you need time off" or "Quit after [her] role is established."

15. Ms. Banerjee replied by stating that she did not intend to take additional time off from work, that her in-laws were going to take care of her new-born child and that her husband worked only 13 minutes from home. Ms. Banerjee further stated "I will definitely not Quit, I really want to work, otherwise I would have just stayed home when I found out."

16. On April 4, 2005, Ms. Banerjee commenced employment with Weston.

17. Soon after Ms. Banerjee commenced her employment, Weston demonstrated that it had no intention of permitting Ms. Banerjee to assume the responsibilities, and perform the duties, of her position as Director of Client Services, or of

providing Ms. Banerjee with any of the significant responsibilities in the company that Ms. Hallac had described during the interview.

18. Weston excluded Ms. Banerjee from client meetings and from projects related to her position as Director of Client Services.

19. A few weeks after Ms. Banerjee began employment at Weston, Ms. Banerjee e-mailed Ms. Hallac and Mark Szycher, the Chief Risk Officer and her direct supervisor ("Mr. Szycher"), inquiring about her responsibilities.

20. Throughout her tenure at Weston, Ms. Banerjee sent Ms. Hallac and Mr. Szycher periodic e-mails requesting additional responsibilities and opportunities to perform the responsibilities for which she was hired.

21. Mr. Szycher and Ms. Hallac failed to make any changes in Ms. Banerjee's minimal responsibilities or respond to her inquiries.

22. On June 30, 2005, less than three months after Ms. Banerjee became an employee of Weston, Ms. Hallac informed Ms. Banerjee that Weston was "laying [her] off."

23. At this time, Ms. Banerjee was six-months pregnant.

24. Ms. Hallac informed Ms. Banerjee that Weston's decision to terminate her employment was not related to Ms. Banerjee's performance.

25. Ms. Hallac claimed that Weston had to lay Ms. Banerjee off because of financial constraints on the company.

26. During this time of alleged financial constraints Weston hired two new employees.

4

27. Ms. Banerjee spoke with Weston's Chief Executive Officer, Albert Hallac ("Mr. Hallac"), about her termination.

28. Mr. Hallac told Ms. Banerjee that she should contact Weston in a few months to inquire about being rehired.

29. Mr. Hallac told Ms. Banerjee that this period "would be great timing for [her since she] would have had the baby by then."

30. Upon information and belief, Weston's suggestion that it terminated Ms. Banerjee's employment as a result of financial constraints was a pretext for discrimination on the basis of pregnancy and sex.

## CLAIM
### (Sex and Pregnancy Discrimination Under Title VII)

31. Ms. Banerjee repeats and realleges the allegations contained in paragraphs 1 through 30 as if separately set forth herein.

32. At all relevant times, Ms. Banerjee was an "employee" under Title VII, 42 U.S.C. § 2000e(f).

33. Defendant is an "employer" for purposes of Title VII, 42 U.S.C. § 2000e(b).

34. Throughout her employment at Weston, Ms. Banerjee was qualified for the position of Director of Client Services for Weston's Research Department.

35. Throughout her employment at Weston, Ms. Banerjee performed her duties in a competent and professional manner.

36. Weston engaged in an adverse employment action by terminating Ms. Banerjee's employment on or about June 30, 2005.

37. By its actions detailed above, Weston unlawfully discriminated against Ms. Banerjee on the basis of her sex and pregnancy in violation of Title VII.

38. Upon information and belief, Weston's discriminatory conduct was undertaken with malice and/or reckless indifference to Ms. Banerjee's rights. Ms. Banerjee is therefore entitled to punitive damages.

39. By reason of the foregoing, Weston is liable to Ms. Banerjee for back pay, front pay or reinstatement, compensatory damages, punitive damages, pre-judgment interest, attorneys' fees and costs.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1. Back pay, reinstatement or front pay, compensatory damages, punitive damages, attorneys' fees, costs and interest, in amounts to be determined at trial; and

2. Such other and further relief as the Court deems appropriate under the circumstances.

PLAINTIFF DEMANDS A JURY TRIAL.

                The Plaintiff
                Akshita Banerjee

                By _____
                    Jonathan B. Orleans (ct 05440)

                ZELDES, NEEDLE & COOPER
                A Professional Corporation
                1000 Lafayette Boulevard
                Bridgeport, Connecticut 06604
                Tel: (203) 333-9441
                Fax: (203) 333-1489
                E-Mail: jorleans@znclaw.com


                Marc Susswein

                LIDDLE & ROBINSON, L.L.P.
                800 Third Avenue
                New York, NY 10022
                Tel : (212) 687-8500
                Fax : (212) 687-1505
                e-mail : msusswein@liddlerobinson.com

                Her Attorneys

# EXHIBIT A

Rec'd 12/21/06

EEOC Form 161-B (3/98)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Akshita Banerjee<br>23 Soundview Farm Road<br>Weston, CT 06883 | From: | EEOC Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

[ ] On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 160-2006-01025 | Susan M. Boscia, Investigator | (617) 565-3213 |

(See also the additional information enclosed with this form.)

**NOTICE TO THE PERSON AGGRIEVED:**

Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA): This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[X] More than 180 days have passed since the filing of this charge.

[ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

[ ] The EEOC will continue to process this charge.

Age Discrimination in Employment Act (ADEA): You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, the paragraph marked below applies to your case:

[ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ] The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

Equal Pay Act (EPA): You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Robert L. Sanders,
Area Office Director

DEC 1 9 2006

(Date Mailed)

Enclosures(s)

cc: Stuart M. Katz, Esq.
Cohen & Wolf
1115 Broad Street, P.O. Box 1821
Bridgeport, CT 06601-1821

Marc A. Susswein, Esq.
Liddle & Robison
800 THIRD AVENUE
New York, NY 10022