UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| AKSHITA BANERJEE | ) |
| | ) |
| Plaintiff, | ) |
| | ) **JOINT PRETRIAL ORDER** |
| v. | ) Civil Action No. |
| | ) 3-07-cv-434 (CFD) |
| WESTON CAPITAL | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendant. | ) December 4, 2009 |

In accordance with the Trial Memorandum Order of the United States District Judge, Christopher F. Droney, issued on July 20, 2009, the plaintiff, Akshita Banerjee, and defendant, Weston Capital Management, LLC ("Weston"), jointly submit the following:

1. **TRIAL COUNSEL:**

**Counsel for Plaintiff:**

Marc A. Susswein (MS 9084)   msusswein@liddlerobinson.com
Andrea Paparella (AP 7015)   apaparella@liddlerobinson.com

Liddle & Robinson, L.L.P.
800 Third Avenue
New York, New York 10022
(212) 687-8500 phone
(212) 687-1505 fax

**Counsel for Defendant:**

Stuart M. Katz (ct 12088)   skatz@cohenandwolf.com
Heather R. Spaide (ct 27705)   hspaide@cohenandwolf.com

Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604
(203) 368-0211 phone
(203) 394-9901 fax

## 2. JURISDICTION

This Court has jurisdiction over this action in accordance with 28 U.S.C. § 1331. Ms. Banerjee filed a charge of sex and pregnancy discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 16, 2005. On December 21, 2006, Ms. Banerjee received a Notice Of Right To Sue letter from the EEOC.

Weston does not contest the subject matter jurisdiction of this Court.

## 3. JURY/NON-JURY:

Plaintiff demands a trial by jury.

## 4. NATURE OF CASE

This is a civil action for damages and remedies for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. Plaintiff alleges that Weston discriminated against her by terminating her on the basis of her pregnancy and sex and seeks the following relief: back pay, reinstatement or front pay, compensatory damages, punitive damages, attorneys' fees, costs and interest, and such other and further relief as the Court deems appropriate under the circumstances.

Defendant denies that it discriminated against Plaintiff on the basis of her pregnancy or sex. Defendant also asserts that, assuming arguendo that Plaintiff could prove liability, she failed to mitigate any damages that she may have suffered.

## 5. STIPULATIONS OF FACT:

The parties agree on the following stipulations of fact:

    a. In February 2005, Ms. Banerjee interviewed with representatives of Weston Capital including Jamilette Hallac, Weston's Director of Human Resources and Operations, for the position of Director of Client Services in Weston's Research Department.

    b. On or about March 2, 2005, Weston extended Ms. Banerjee an offer of employment.

    c. Subsequently, during a meeting between Ms. Banerjee and Jamilette Hallac, Ms. Banerjee disclosed to Ms. Hallac that she was pregnant.

    d. Ms. Banerjee signed a written employment agreement with Weston on March 16, 2005.

    e. Ms. Banerjee began employment with Weston on April 4, 2005 as

the Director of Client Services.

    f.  The salary for the position of Director of Client Services was $125,000.

    g.  As Director of Client Services for Weston, Ms. Banerjee was eligible to receive bonus compensation as part of her overall compensation.

    h.  Weston terminated Ms. Banerjee's employment on June 30, 2005.

    i.  Throughout her employment at Weston, Ms. Banerjee was qualified for the position of Director of Client Services for Weston's Research Department.

    j.  Jamilette Hallac informed Ms. Banerjee that Weston's decision to terminate her employment was not related to Ms. Banerjee's performance.

    k.  Ms. Banerjee filed a charge of sex and pregnancy discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 16, 2005.

    l.  At all relevant times, Ms. Banerjee was an "employee" of Weston, and Weston was an "employer" of Ms. Banerjee, within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII").

### 6.   PLAINTIFF'S CONTENTIONS:

    a.  Jamilette Hallac described the position of Director of Client Services to Ms. Banerjee as a position in which Ms. Banerjee would have several responsibilities, including heading up due diligence and client servicing and acting as a liaison with the Marketing Group.

    b.  After Weston extended Ms. Banerjee an offer of employment, Ms. Banerjee notified Jamilette Hallac during a meeting that she was pregnant. Jamilette Hallac responded with an awkward laugh and stated, "Well . . . there isn't much we can do about that now . . . that would be discrimination."

    c.  After Ms. Banerjee notified Jamilette Hallac that she was pregnant, Jamilette Hallac and Weston expressed reservations about hiring Ms. Banerjee.

    d.  By e-mail communication dated March 11, 2005, Ms. Hallac expressed reservations about hiring Ms. Banerjee when she stated that Weston was concerned that Ms. Banerjee would either "start off strong, but then decide that you need time off" or "Quit after [her] role is established."

e. Ms. Banerjee replied by stating that she did not intend to take additional time off from work, that her in-laws were going to take care of her new-born child and that her husband worked only 13 minutes from home. Ms. Banerjee further stated "I will definitely not Quit, I really want to work, otherwise I would have just stayed home when I found out."

f. After Ms. Banerjee commenced employment with Weston, it became apparent that Weston had no intention of permitting Ms. Banerjee to assume full responsibilities for the Director of Client Services position.

g. On June 30, 2005, less than three months after Ms. Banerjee became an employee of Weston, Ms. Hallac informed Ms. Banerjee that Weston was "laying [her] off."

h. Ms. Hallac claimed that Weston had to lay Ms. Banerjee off because of financial constraints of the company.

i. On May 16, 2005, during a period Weston alleges it was experiencing financial constraints, Weston hired Candace Corley and Sandra Carey to the positions of Executive Assistants. On May 23, 2005, Weston hired Geraldine Turecek to the position of Executive Assistant.

j. Weston's assertion that it terminated Ms. Banerjee's employment due to financial constraints is contradicted by the evidence and is a pretext for discrimination on the basis of her pregnancy and sex.

k. Ms. Banerjee's gender and pregnancy were motivating factors in Weston's decision to terminate Ms. Banerjee's employment.

l. Ms. Banerjee is entitled to back pay damages for the period June 30, 2005 through judgment at trial, plus pre-judgment interest.

m. Ms. Banerjee made reasonable efforts to mitigate her damages by seeking alternate employment and must be fully compensated for her loss of earnings.

n. Ms. Banerjee is also entitled to front pay damages.

o. Weston's discriminatory conduct was engaged in with malice and/or reckless indifference to Ms. Banerjee's protected rights, entitling her to punitive damages under Title VII.

7. **DEFENDANT'S CONTENTIONS:**

    a.    Plaintiff was hired to fill a newly created position – Director of Client Services.

    b.    Defendant learned, after Plaintiff had been offered the position, but before she commenced employment, that Plaintiff was pregnant.

    c.    Plaintiff's disclosure of her pregnancy did nothing to alter Defendant's intention to employ Plaintiff.

    d.    Plaintiff signed a written employment agreement on March 16, 2005 and began employment, pursuant to that agreement, on April 4, 2005.

    e.    Subsequent to the commencement of Plaintiff's employment, Defendant was forced to engage in a budget cutting process which, unfortunately, included the elimination of certain positions.

    f.    On or about June 1, 2005, Defendant's staff was notified of impending layoffs due to these budget cuts.

    g.    Plaintiff's newly created position was among these eliminated by Defendant on or about June 30, 2005.

    h.    The selection of Plaintiff's position for elimination was in no way related to her gender or pregnancy.

    i.    Plaintiff's employment was terminated for legitimate business reasons and neither her gender or pregnancy were motivating factors.

    j.    Plaintiff is not entitled to any damages, but even if she did suffer damages, her failure to mitigate such damages would bar any recovery.

8. **LEGAL ISSUES:**

    a.    Whether Weston discriminated against Ms. Banerjee on the basis of her sex and pregnancy in violation of Title VII.

Relief:

    b.    Whether Ms. Banerjee is entitled to back pay and, if so, in what amount.

c. Whether Ms. Banerjee is entitled to front pay and, if so, in what amount.

d. Whether Ms. Banerjee is entitled to compensatory damages and, if so, in what amount.

e. Whether Ms. Banerjee is entitled to punitive damages and, if so, in what amount.

f. Whether Ms. Banerjee is entitled to attorneys' fees and costs and, if so, in what amount.

g. Whether Ms. Banerjee failed to mitigate any damages she may have suffered.

9. **VOIR DIRE QUESTIONS:**

### Statement of the Case:

The plaintiff, Akshita Banerjee, is a former employee of the defendant, Weston Capital Management LLC ("Weston Capital"), which is an investment firm located in Westport, Connecticut. In this lawsuit, Ms. Banerjee seeks damages, claiming that the defendant discriminated against her by terminating her employment of the basis of her pregnancy and sex. Weston Capital denies all of the plaintiff's claims.

### Voir Dire Questions:

1. Do you know any attorney employed by or associated with the firm Liddle & Robinson, L.L.P.?

2. Do you know any attorney employed by or associated with the firm, Cohen and Wolf, P.C.?

3. Have you or anyone you know ever been represented by any of those firms or attorneys?

4. Do you know Ms. Akshita Banerjee or any member of her family?

5. Do you know Mr. Albert Hallac or any member of his family?

6. Do you know of the following people: Kristin Leopold? Marc Szycher? Jamilette Hallac? Kerry Skillin?

7. Have you ever heard of Weston Capital Management, LLC?

8. Have you or any family members or friends ever worked for or been a client of Weston Capital Management LLC? What was your experience?

9. Have you ever been a party to a written employment agreement?

10. Have you ever been laid off from a job?

11. Have you ever been terminated from a job, for reasons other than a layoff?

12. Have you or a member of your family ever sued or brought a claim against an employer or former employer?

13. Have you ever made a complaint to an employer regarding discrimination in the workplace?

14. Do you think it is wrong to sue an employer? If so, please explain.

15. Have you ever been involved in a lawsuit? If so, how might that experience affect your role as a juror in this case?

16. Do you understand that, in our legal system, anyone can bring or make a claim in a lawsuit, regardless of its merit?

17. Do you feel that lawsuits involving employment claims are not that important? If so, please explain why.

18. Have any of you ever owned your own business? Were any lawsuits brought against the business?

19. If I instruct you that you may award money to the plaintiff for economic losses if she meets her burden of proof, would any of you have a problem following my instructions?

20. If the law, as I explain it to you, and the evidence presented to you,

does not justify or result in either a large damage amount or any damage amount, would that be okay with you? That is, in considering damages, do you have a dollar limit below which you would not go in reaching your verdict?

21. Is there any reason you can think of which would cause you to favor one side over the other at the outset of this case?

22. Have you ever owned a business? Have any of you ever worked as a manager of a business? If yes, have you ever had to participate in terminating the employment of an employee? Were any of those termination decisions the subject of litigation or potential litigation?

23. Have any of you ever worked as a human resources representative of a company? In that capacity, have you participated in termination decisions of employees? Were any of those termination decisions the subject of litigation or potential litigation?

24. Have any of you ever worked as an accountant, controller or CFO?

25. Have any of you ever participated in a workplace investigation of a discrimination complaint? If yes, do you believe that the workplace investigation that you participated in was handled fairly and appropriately?

26. Do you have any children? Have you or your spouse ever taken a maternity or paternity leave of employment?

27. How do you feel about a women's job being protected because she is pregnant?

28. How do you feel about laws in this country that protect people from employment discrimination?

29. How do you feel about the amount of attention placed on protecting employees from discrimination in the workplace?

30. Have you ever served as a juror before? What type of case? What was the outcome?

31. How do you feel about litigation, in general, as a means of resolving disputes?

32. Have you or a relative or close friend ever been a party to a lawsuit? If so, were you the plaintiff or the defendant?

33. Would your prior experience with the court system in any way affect your ability to be completely fair and impartial in hearing this case?

34. Do you or a family member work in any aspect of the financial services industry? In what capacity?

35. Do you or a family member work for a hedge fund? In what capacity?

**10.** **LIST OF WITNESSES:**

Plaintiff's witnesses:

a. Ms. Akshita Banerjee, c/o Liddle & Robinson, 800 Third Avenue, New York, NY 10022. Ms. Banerjee will testify about Defendant's discriminatory treatment including the termination of her employment by Defendant and the damages she incurred as a result of Weston's discriminatory misconduct.

b. Mr. Albert Hallac, Weston Capital Management LLC, 264 Riverside Avenue, Westport, CT 06880. Mr. Hallac is expected to testify about the circumstances that lead to Defendant's decision to terminate Plaintiff's employment and the financial constraints that Weston was experiencing that form the basis of Defendant's stated legitimate business reason for terminating Plaintiff's employment.

c. Ms. Jamilette Hallac, c/o Weston Capital Management LLC, 264 Riverside Avenue, Westport, CT 06880. Ms. Hallac is expected to testify about Defendant's decision to hire Plaintiff and the circumstances that lead to Defendant's decision to terminate Plaintiff's employment.

d. Mr. Marc Szycher, 24 Sunderland Lane, Katonah, NY. Mr. Szycher is expected to testify about Defendant's decision to hire Plaintiff, the circumstances that lead to Defendant's decision to terminate Plaintiff's employment and the financial constraints that Weston was experiencing that form the basis of Defendant's stated legitimate business reason for terminating Plaintiff's employment.

e. . Ms. Kristen Leopold, 333 Cedar Lane, New Canaan, CT. Ms. Leopold is expected to testify about Defendant's financial constraints that Weston was experiencing that form the basis of Defendant's stated legitimate business reason for terminating Plaintiff's employment.

Defendant's witnesses:

a. Mr. Albert Hallac, Weston Capital Management LLC, 264 Riverside Avenue, Westport, CT 06880. Mr. Hallac is expected to testify about Defendant's decision to terminate Plaintiff's employment.

b. Ms. Jamilette Hallac, c/o Weston Capital Management LLC, 264 Riverside Avenue, Westport, CT 06880. Ms. Hallac is expected to testify about Defendant's decision to terminate Plaintiff's employment.

c. Ms. Kristen Leopold, 333 Cedar Lane, New Canaan, CT. Ms. Leopold is expected to testify about Defendant's financial decisions and condition during the relevant time period.

d. Mr. Marc Szycher, 24 Sunderland Lane, Katonah, NY. Mr. Szycher is expected to testify about Defendant's decision to terminate Plaintiff's employment.

e. Ms. Kerry Skillen, CRC Services LLC, 813 Williams Street, Suite 212, Longmeadow, MA. Ms. Skillen is an expert witness in the field of employability and wage earning capacity. She was disclosed as an expert witness on November 13, 2008. A copy of the Disclosure of Witness is attached hereto and includes a copy of Ms. Skillen's CV as well as a summary of the opinion to be expressed, a brief summary of the basis of the opinion and a list of the materials on which the witness intends to rely.

### **Plaintiff's Objection to Defendant's Expert**

Plaintiff objects to portions of the anticipated testimony of Kerry Skillin, who Defendants intend to introduce as an expert on the subject of Plaintiff's "Employability & Wage Earning Capacity." Plaintiff also objects to the expert report submitted by Skillin and will address those objections under separate cover.

Specifically, Skillin was hired by Defendants to address the "following factors": 1.) "Is the plaintiff, Ms. Akshita Banerjee, employable?; 2.) If so, what is her earning capacity since she has left the labor market in 2005? 3.) Has the plaintiff conducted a diligent job search?" Skillin's testimony is objectionable because it invades the province of the jury by attempting to answer ultimate issues for the jury as to whether Plaintiff's job search was reasonable.

As the Employer, Weston "bears the burden of demonstrating that [the] plaintiff has failed to satisfy the duty to mitigate." Broadnax v. City of New Haven, 415 F.3d 265, 268 (2d Cir.2005). A defendant can meet this burden "by establishing (1) that suitable work existed, and (2) that the employee did not make reasonable efforts to obtain it." Dailey v. Societe Generale, 108 F.3d 451, 456 (2d Cir.1997). But an employee's "obligation" to minimize her

wage losses "is not onerous and does not require her to be successful" in seeking a new job. Hawkins v. 1115 Legal Serv. Care, 163 F.3d 684, 695 (2d Cir.1998). In short, the "question is whether the plaintiff acted reasonably in attempting to gain other employment or in rejecting proffered employment." Pierce v. F.R. Tripler & Co., 955 F.2d 820, 830 (2d Cir.1992).

Skillin's testimony is improper pursuant to FRE 701, 702, and 704, to the extent that it "undertakes to tell the jury what result to reach, [since] this does not aid the jury in making a decision but rather attempts to substitute the expert's opinion for the jury." Roniger v. McCall, 2000 WL 1191078, *4 (S.D.N.Y. 2000), quoting U.S. v. Duncan, 42 F.3d 97, 101. In Roniger the court would not permit the defendants' expert to "testify to conclusions contained in the Expert Report as to whether Roniger's job search was 'reasonable,' 'active and proper,' 'vigorous,' 'serious,' and the like." Id. Accordingly, the proposed testimony of Defendant's expert, Skillin, invades the province of the jury to the extent she undertakes to tell the jury what result to reach, including whether Banerjee engaged in reasonable efforts to find a suitable position and should be limited to Defendant's duty to prove the availability of suitable jobs.

11. **EXHIBITS:**

The parties attach their respective exhibit lists.

12. **DEPOSITION TESTIMONY:**

13. **REQUESTS FOR JURY INSTRUCTIONS:**

The parties attach proposed jury instructions.

14. **ANTICIPATED EVIDENTIARY PROBLEMS:**

The parties have attached motions in limine with regard to anticipated evidentiary problems involving the examination of witnesses.

15. **PROPOSED FINDINGS AND CONCLUSIONS:**

NOT APPLICABLE

16. **TRIAL TIME:**

The parties anticipate 4-5 days of evidence, excluding closing arguments.

**THE PLAINTIFF,**

By: *[signature]*
Marc Susswein
Andrea Paparella
Liddle & Robinson, L.L.P.
800 Third Avenue
New York, NY 10022
Tel. (212) 687-8500
Fax: (212)687-1505
msusswein@liddlerobinson.com
apaparella@liddlerobinson.com

**THE DEFENDANT,**

By *[signature]*
Stuart M. Katz ct12088
Heather R. Spaide ct27705
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT 06604
Tel. (203) 368-0211
Fax. (203) 337-5505
skatz@cohenandwolf.com
hspaide@cohenandwolf.com